# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JAMES HARRINGTON and HEATHER HARRINGTON,<br><br>    Plaintiffs,<br><br>v.<br><br>CHEMTRADE CHEMICALS US LLC, CHEMTRADE SOLUTIONS LLC, CHEMTRADE CHEMICALS CORPORATION, CHEMTRADE PERFORMANCE CHEMICALS US, LLC, CHEMTRADE LOGISTICS (US), INC.,<br><br>    Defendants. | |
| CHEMTRADE CHEMICALS US LLC, CHEMTRADE SOLUTIONS LLC, CHEMTRADE CHEMICALS CORPORATION, CHEMTRADE PERFORMANCE CHEMICALS US, LLC, CHEMTRADE LOGISTICS (US), INC.,<br><br>    Third-Party Plaintiffs,<br><br>v.<br><br>SHAMROCK SERVICES, LLC,<br><br>    Third-Party Defendant. | Case No: 1:22-cv-00315-SEG |
| SHAMROCK SERVICES, LLC,<br><br>    Third-Party Counterclaimant,<br><br>v. | |

CHEMTRADE SOLUTIONS LLC,
CHEMTRADE CHEMICALS US LLC,
CHEMTRADE CHEMICALS CORPORATION,
CHEMTRADE PERFORMANCE CHEMICALS
US LLC, and CHEMTRADE LOGISTICS (US),
INC,

              Counter-defendants.

## **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56(a), and Local Rule 56.1, Defendants Chemtrade Chemicals US LLC, Chemtrade Solutions LLC, Chemtrade Chemicals Corporation, Chemtrade Performance Chemicals US, LLC, Chemtrade Logistics (US), Inc. (collectively "Defendants") respectfully move this Court for an order granting summary judgment as to all of Plaintiffs' claims (Counts I, II, and III), Plaintiffs' claim for punitive damages, Plaintiff James Harrington's claims for future lost income, loss of earning capacity, and permanent injuries, and Plaintiff Heather Harrington's claim for loss of consortium, companionship, society, affection, services, and support (ECF No. 1-1, State Court File incl. Complaint at 16–17, ¶¶ 34–35). Summary judgment in Defendants' favor is proper because the record evidence establishes that no genuine dispute exists as to any material fact with respect to Plaintiffs' claims, and Defendants are entitled to judgment as a matter of law. This Motion is supported by the following documents, which are filed herewith:

1. Defendants' Memorandum of Law in Support of its Motion for Summary

Judgment; and

2. Defendants' Separate Statement of Material Facts to Which There is No Genuine Issue to be Tried, along with accompanying exhibits.

Respectfully submitted this 14th day of November, 2023.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

/s/ *Alex G. Pisciarino*
Richard B. North, Jr.
Georgia Bar No. 545599
Alex G. Pisciarino
Georgia Bar No. 569773
201 17th Street, NW
Suite 1700
Atlanta, GA 30363
(404) 322-6000 (phone)
(404) 322-6050 (facsimile)
richard.north@nelsonmullins.com
alex.pisciarino@nelsonmullins.com

*Counsel for Defendants/Third-Party Plaintiffs/Third-Party Counterdefendants Chemtrade Solutions LLC, Chemtrade Chemicals US LLC, Chemtrade Chemicals Corporation, Chemtrade Performance Chemicals US, LLC, and Chemtrade Logistics (US), Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| JAMES HARRINGTON and HEATHER HARRINGTON,<br><br>        Plaintiffs,<br><br>v.<br><br>CHEMTRADE CHEMICALS US LLC, CHEMTRADE SOLUTIONS LLC, CHEMTRADE CHEMICALS CORPORATION, CHEMTRADE PERFORMANCE CHEMICALS US, LLC, CHEMTRADE LOGISTICS (US), INC.,<br><br>        Defendants. | Case No: 1:22-cv-00315-SEG |
| CHEMTRADE CHEMICALS US LLC, CHEMTRADE SOLUTIONS LLC, CHEMTRADE CHEMICALS CORPORATION, CHEMTRADE PERFORMANCE CHEMICALS US, LLC, CHEMTRADE LOGISTICS (US), INC.,<br><br>        Third-Party Plaintiffs,<br><br>v.<br><br>SHAMROCK SERVICES, LLC,<br><br>        Third-Party Defendant. | |
| SHAMROCK SERVICES, LLC,<br><br>        Third-Party Counterclaimant,<br><br>v.<br><br>CHEMTRADE SOLUTIONS LLC, CHEMTRADE CHEMICALS US LLC, | |

i

CHEMTRADE CHEMICALS CORPORATION,
CHEMTRADE PERFORMANCE CHEMICALS
US LLC, and CHEMTRADE LOGISTICS (US),
INC,

        Counter-defendants.

## <u>Table of Contents for Memorandum in Support of Defendants' Motion for Summary Judgment</u>

I.     INTRODUCTION ........................................................................3

II.    FACTUAL BACKGROUND ......................................................2

III.   SUMMARY JUDGMENT STANDARD .....................................7

IV.  ARGUMENT AND CITATION OF AUTHORITY ....................................8

    A.   Plaintiffs' claims against all entities other than Chemtrade Solutions, fail because there is no evidence of their involvement in the subject incident........8

    B.   Plaintiffs' claims fail because Chemtrade Solutions provided legally adequate warnings of the risk of exposure to sulfuric acid and thus Plaintiff James Harrington assumed the risk of the injury he sustained.........................8

    C.   Plaintiffs' professional negligence and "skilled services" claims fail as a matter of law for lack of expert testimony.......................................................13

    D.   Plaintiffs' claims related to PPE fail because Defendants had no duty to require PPE, and because Plaintiffs' have no expert testimony to support their claim that fully encapsulated PPE should have been required. ......................17

    E.   Plaintiffs' related failure-to-train claims fail because Defendants required Shamrock Services to ensure its employees take site-specific training courses provided by Abbottsfield, and Mr. Harrington's failure to take these courses did not proximately cause his injuries. ...........................................................19

    F.   Mr. Harrington's claims of damages for future lost wages/income, loss of earning capacity, and permanent injury fail because Plaintiffs' have not proven lost earning capacity to a reasonable degree of certainty....................20

    G.   Plaintiffs' punitive damages claim fails because there is no evidence that such damages are warranted. .........................................................................23

    H.   If summary judgment is granted against Plaintiffs' substantive claims, Plaintiffs' loss of consortium claim would also fail. ......................................25

V.   CONCLUSION ...........................................................................25

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Fed. R. Civ. P. 56(a), and L.R. 56.1, Defendants Chemtrade Chemicals US LLC, Chemtrade Solutions LLC, Chemtrade Chemicals Corporation, Chemtrade Performance Chemicals US, LLC, Chemtrade Logistics (US), Inc. (collectively "Defendants") respectfully move this Court for an order granting summary judgment as to all of Plaintiffs' substantive claims (Counts I, II, and III), and as to their claimed punitive damages, and claimed damages for future lost income, loss of earning capacity, permanent injuries, and loss of consortium, companionship, society, affection, services, and support. (ECF No. 1-1, State Court File incl. Complaint ["Complaint"] at 16–17, ¶¶ 34–35). This Motion is supported by Defendants' Separate Statement of Material Facts to Which There is No Genuine Issue to be Tried ("SOMF"), which is filed herewith.

## I.      <u>INTRODUCTION</u>

This is a personal injury action in which Plaintiffs James and Heather Harrington seek damages for chemical burns and other injuries Mr. Harrington allegedly sustained while working for Third Party Defendant and Counterclaimant Shamrock Services, LLC ("Shamrock Services") at a manufacturing facility owned by Chemtrade Solutions, LLC ("Chemtrade Solutions"). *See generally* (ECF No. 1-1, Complaint). At the facility, in the course of his employment with Shamrock

Services, Mr. Harrington was struck by sulfuric acid expelled when he removed a section of steel sulfuric acid pipe. *Id.* The acid line had been purged Adam Lawson, of Chemtrade Solutions, before Mr. Harrington began work on it.

On the undisputed factual record, Plaintiffs' claims for professional negligence, negligence, and negligence per se, punitive damages, Mr. Harrington's claims for future lost wages and related damages, and Mrs. Harrington's loss of consortium claim fail and judgment should be entered in favor of Defendants.

## II.   <u>FACTUAL BACKGROUND</u>

Chemtrade Solutions owns a water chemical manufacturing facility at 4652 Mead Road, Macon, GA. (ECF No. 6, Joint Prelim. Report at 2). Chemtrade Solutions formed a written contract with Shamrock Services, Purchase Order 47298819, on a project to repair a tank and install new piping at the facility. ECF No. 10, Shamrock's Answer and Countercl., at 6, ¶ 8); (Ex. A., P.O. 47298819); (Ex. B, Adams dep. tr. at 116:25–117:13). As part of this contract, Shamrock Services to remove a section of a sulfuric acid pipeline at the Mead Road facility. (*Id.*).

During a pre-job site visit, Supervisor Charlie Bottoms of Shamrock Services, discussed aspects of the job with Jonathan Adams, the plant manager of the Mead Road facility, and Adam Lawson, the operator at the facility. (Ex. C, Bottoms dep. tr. at 27:11–28:8). They discussed that Shamrock Services would provide the equipment for the job, including the acid suits for its employees. (Ex. C, Bottoms

dep. tr. at 27:11–29:2). They also agreed that, before Shamrock Services employees removed the pipe segment, Chemtrade personnel would purge the line of acid by blowing compressed air through it. (Ex. C, Bottoms dep. tr. at 30:14–31:22). This was because Mr. Adams understood that using water to purge the line would cause an extreme exothermic reaction, which would increase the likelihood that the steel pipes containing the acid could become damaged and corroded from the inside. (Ex. B, Adams dep. tr. at 128:8–24). Mr. Bottoms also testified that water could create a corrosive environment. (Ex. C, Bottoms dep. tr. at 30:3–30:7).

In the Purchase Order, Chemtrade Solutions contractually required Shamrock Services to ensure its personnel took web-based training courses, provided by Abbottsfield, before entering any Chemtrade facility to work. (Ex. A., P.O. 47298819). Mr. Bottoms testified that this training was a requirement to enter the Mead Road plant. (Ex. C, Bottoms dep. tr. at 47:9–19). The training consisted of two modules, entitled "Contractor Safety Orientation Chemtrade Water Chemical Plant" and "Chemtrade Corporate Contractor Safety Orientation." (Ex. D, Abbottsfield training modules). Between them, the modules disclose that sulfuric acid is among several "strong corrosive liquid chemicals that are significant hazards in the Chemtrade plant" and communicated requirements related to such hazards (*Id.* at CHEMTRADESOLUTIONS_000102, 154).

On December 30, 2019, Shamrock Services personnel arrived at the Mead Road facility. Charlie Bottoms was the supervisor directing the project, and was the highest-ranking Shamrock Services employee on-site. (Ex. C, Bottoms dep. tr. at 51:19–52:9); (Ex. E. King dep. tr., at 40:6–15). Plaintiff/Shamrock Services employee James Harrington was the foreman on the project, and was assisted by his co-workers Jeffrey "Jayce" Carr and John Watkins. (Ex. F., Harrington dep. tr. at 72:12–18, 107:15–108:17). Adam Lawson, of Chemtrade Solutions, locked up the sulfuric acid pipeline, and drained the acid out at the lowest point of the system. (Ex. B, Adams dep. tr. at 35:7–22); (Ex. G, Lawson dep. tr. at 32:20–33:21). He then hooked up an air hose to the pipe system and used compressed air to blow the remaining acid out of the system. (Ex. G, Lawson dep. tr. at 33:3–21). Mr. Lawson checked the drain at the end and ensured no acid was still blowing through it. (Ex. B, Adams dep. tr. at 35:7–22); (Ex. G, Lawson dep. tr. at 32:20–33:21).

A job safety analysis meeting was held with the Shamrock Services employees present, including Mr. Harrington. (Ex. B, Adams dep. tr. at 97:4–11); (Ex. C, Bottoms dep. tr. at 53:20–54:1); (Ex. F., Harrington dep. tr. at 83:15–84:6); (Ex. G, Lawson dep. tr. at 18:18–19:8); (Ex. H., Watkins dep. tr. at 28:4–15). According to testimony from Mr. Adams, confirmed by Mr. Bottoms and Mr. Watkins, the Shamrock Services employees were informed then that there was a possibility that they could be exposed to residual sulfuric acid left in the line after it

was purged. (Ex. B, Adams dep. tr. at 97:4–11); (Ex. C, Bottoms dep. tr. at 55:8–22); (Ex. H., Watkins dep. tr. at 28:4–15). Consequently, PPE was required during the line break job, including an acid suit, face shield, hood, googles, and gloves. (Ex. I, Email from D. Diehl to M. Hunziker et al); (Ex. J, Safe Work Permit). Mr. Harrington and the other Shamrock Services workers signed a safe work permit, which disclosed the hazards of the job, including sulfuric acid. (Ex. F., Harrington dep. tr. at 90:15–91:15; 93:13–94:12); (Ex. J, Safe Work Permit). It also advised that the signatories involved in the line break should "consider [the line] active." (Ex. J, Safe Work Permit). Shamrock Services' own safety procedures contain similar guidance, requiring employees breaking a line to "assume the worst and always anticipate residual pressure or chemical." (Ex. K, Shamrock Services, LLC Safety & Health Dept. Program & Procedures, at Shamrock_000132–133).

Soon thereafter, the Shamrock Services employees began work on removing the section of pipe. Mr. Harrington, Mr. Carr, and Mr. Watkins proceeded to attach a come-along and chain to the section of pipe to hold it still during the removal process, (Ex. F., Harrington dep. tr. at 110:1–112:6); but Mr. Carr added slack to the chain such that it would enable the pipe section to move. (Ex. H., Watkins dep. tr. at 21:16–22:3); (Ex. L., Carr dep. tr. at 30:19–30:24).

At the time, Mr. Harrington knew the line was a sulfuric acid line, (Ex. F., Harrington dep. tr. at 96:23–97:5); knew there was a risk he might be exposed to

sulfuric acid during the job, (*Id.* at 95:12–96:20); and knew this acid was corrosive and caused bodily harm. (*Id.* at 95:21–96:5). He also knew that he needed to wear an acid suit during the job. (*Id.* at 105:15:106:1).

Ultimately, Mr. Harrington removed the bolts on the flange connecting the relevant section of pipe, but found it was stuck. (Ex. F., Harrington dep. tr. at 112:7–15); (Ex. H., Watkins dep. tr. at 19:2–10). Mr. Watkins testified that they tried using a crowbar to pry open the flange to no avail. (Ex. H., Watkins dep. tr. at 19:2–10). Eventually, according to Mr. Carr, Mr. Harrington positioned himself about eye level or slightly above the flange. (Ex. L., Carr dep. tr. at 32:5–32:14).

Mr. Harrington then struck the flange using a wedge and hammer, causing it to spring open. (Ex. F., Harrington dep. tr. at 112:16–21); (Ex. L., Carr dep. tr. at 31:8–31:14). The pipe section fell several inches notwithstanding the chain intended to secure it. (Ex. H., Watkins dep. tr. at 21:16–22:3); (Ex. L., Carr dep. tr. at 7:18–22, 30:6–24); (Ex. M, Email from IMS Admin to J. Adams et al). Residual sulfuric acid was released from the pipe and struck Mr. Harrington from under his face shield. (Ex. F., Harrington dep. tr. at 118:3–13); (Ex. L., Carr dep. tr. at 26:16–20).

Mr. Harrington proceeded to a nearby safety shower and was rinsed down. (Ex. B, Adams dep. tr. at 66:4–19). Messrs. Adams, Lawson, and Bottoms rushed to meet him and Mr. Adams promptly called 911. (Ex. B, Adams dep. tr. at 66:4–19); (Ex. C, Bottoms dep. tr. at 89:17–90:15); (Ex. G, Lawson dep. tr. at 15:9–16:2). Mr.

Harrington was taken to the hospital for treatment. (Ex. C, Bottoms dep. tr. at 90:16–91:2). After his injury, Mr. Harrington did not work for a period of just over three months. *Compare* (Ex. N, Harrington-Shamrock Services Wage Statement) *with* (Ex. O, Harrington-DZ Gibson Generating Station ADA Specification Form) *and* (Ex. P, Harrington-DZ Payroll Chart). He resumed work as a welder with Day & Zimmerman in March 2020. (Ex. P, Harrington-DZ Payroll Chart) As of the date of his deposition, Mr. Harrington was working as a welder for Tesacon, Inc.. (Ex. F., Harrington dep. tr. at 35:2–6); (Ex. Q, Tesecon Employee History Report).

### III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party y "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

As demonstrated above, there are no genuine issues regarding any facts that are material to Plaintiffs' claims, and Defendants are entitled to summary judgment.

## IV.   ARGUMENT AND CITATION OF AUTHORITY

**A. Plaintiffs' claims against all entities other than Chemtrade Solutions, fail because there is no evidence of their involvement in the subject incident.**

Chemtrade Solutions owns the facility that was the site of the alleged incident and was the party that hired Shamrock Services to perform the line break giving rise to this litigation. *See* (ECF No. 6, Joint Prelim. Report at 2). Plaintiffs have produced no evidence to suggest that the related corporate entities Chemtrade Chemicals US LLC, Chemtrade Chemicals Corporation, Chemtrade Performance Chemicals US, LLC, and Chemtrade Logistics (US), Inc. have any relevance to this action whatsoever, and as such, claims against these entities fail as a matter of law.

**B. Plaintiffs' claims fail because Chemtrade Solutions provided legally adequate warnings of the risk of exposure to sulfuric acid and thus Plaintiff James Harrington assumed the risk of the injury he sustained.**

Georgia law has long recognized an exception to a landowner's duty under O.C.G.A. § 51-3-1 to use ordinary care in keeping their premises safe, known as the hired worker exception, which is an "expression of the doctrine of assumption of [the] risk." *Garcia v. KRC Alderwood Trails, LLC*, 348 Ga. App. 84, 89 (2018). It applies when a property is an "inherently and obviously unsafe area, such as a construction or demolition site, and the worker is hired to assist in the repair, construction, or demolition of the site." *Id.* In such circumstances, the owner is not

8

liable for injuries that "arose from or were incidental to the work undertaken by [the worker]… because the worker has actual notice of the dangers associated with the work and has the opportunity to observe the situation and to assess the risks for himself." *Id.* (citations omitted). Summary judgment is appropriate in "clear and palpable cases, where it appears that [a hired contractor] recklessly tests an observed and clearly obvious peril, or voluntarily assumes a position of imminent danger." *Id.*

Here, summary judgment is appropriate because Mr. Harrington was an independent contractor employed by Shamrock Services to perform work in an inherently and obviously unsafe area. He knew he was working on a sulfuric acid line, knew that sulfuric acid was corrosive, and knew that it "caused bodily harm." (Ex. F., Harrington dep. tr. at 95:21–96:5). Mr. Harrington signed a safe work permit that disclosed sulfuric acid as a hazard of the job (Ex. F., Harrington dep. tr. at 90:15–91:15; 93:13–94:12); (Ex. J, Safe Work Permit); and employees from both Chemtrade and Shamrock have testified that Mr. Harrington and other Shamrock Services employees were warned to expect that some amount of sulfuric acid would remain in the pipe. (Ex. B, Adams dep. tr. at 97:4–11); Ex. C, Bottoms dep. tr. at 55:8–22); (Ex. H., Watkins dep. tr. at 28:4–15). Shamrock Services' internal policies and the safe work permit Mr. Harrington signed before beginning work on the pipe both advised him to treat the line as if it were active. (Ex. K, Shamrock Services, LLC Safety & Health Dept. Program & Procedures, at Shamrock_000132–133);

(Ex. J, Safe Work Permit). Both advised him to consider line of fire risks, which Mr. Harrington interpreted as being "in the direct path of whatever's coming at you." (*Id.*; Ex. F., Harrington dep. tr. at 112:16–21). Mr. Bottoms testified that the Shamrock Services employees all knew to treat the pipe like it was active and that he communicated to Mr. Harrington the importance of considering splash risks when breaking the line. (Ex. C, Bottoms dep. tr. at 53:3–54:4). With this knowledge, Mr. Harrington voluntarily assumed the task of performing the line break because, as between himself, Mr. Carr, and Mr. Watkins, Mr. Harrington was the most experienced. (*Id.* at 110:13–23).

Nevertheless, Mr. Harrington did not treat the line as if it were active. Instead, he used a hammer to break the flange open, while he was positioned at eye level with the flange or only slightly above it. (Ex. L., Carr dep. tr. at 32:5–14). Dan King, President of Shamrock Services, testified that best practices would be to be above the flange, rather than at eye level. (Ex. E. King dep. tr., at 49:20–25). These facts indicate that Mr. Harrington knew of the dangers associated with his work and recklessly tested the peril. As such, Defendants are entitled to summary judgment.

Defendants are also entitled to summary judgment because Mr. Bottoms was sufficiently warned of the risk of residual sulfuric acid. "Full knowledge by [an] independent contractor" of the dangers associated with the contractor's work, "will be held to discharge the landowner's alternative duty to warn the employees."

*Douberly v. Okefenokee Rural Elec. Membership Corp.*, 146 Ga. App. 568, 570 (1978). A landowner can specifically discharge a duty to warn the contractor's employees by providing the contracting company's supervisor of knowledge of the danger at issue. *See McKinney v. Regents of the Univ. Sys. of Ga.*, 284 Ga. App. 250, 252–53 (2007) ("[B]ecause any duty the defendants had to warn McKinney of the buried electrical lines was satisfied by notice to McKinney's supervisor, the trial court properly granted summary judgment to the defendants.").

In this case, Mr. Bottoms served as the on-site supervisor directing the project, and was the highest-ranking Shamrock Services employee present. (Ex. C, Bottoms dep. tr. at 51:19–52:9); (Ex. E. King dep. tr., at 40:6–15). Mr. Bottoms testified that he knew "99 percent sulfuric acid" was a hazard of the line break. (Ex. C, Bottoms dep. tr. at 27:22–28:5). He further testified that he discussed what method would be used to purge the line of acid long before the job with Mr. Adams. (*Id.* at 29:6–29:10; 30:9–31:20). Mr. Bottoms testified that that there is always risk of residual acid remaining in a purged line, and so he wanted the pipe to be purged with water so that any remaining acid would be weaker. (Ex. C, Bottoms dep. tr. at 93:19–94:3, 111:15–17, 117:3–13). Ultimately however, Mr. Bottoms agreed that he knew the line "would be purged with air when [Shamrock Services'] employees started working on it," and stated that he "went with it." (*Id.* at 29:6–29:10; 30:9–31:20).

11

Mr. Bottoms' testimony establishes that through his prior conversations with Mr. Adams, Mr. Bottoms *knew* that there was a risk that Shamrock Services' employees would come into contact with undiluted sulfuric acid during the line break. As such, Defendants provided legally adequate warnings to Shamrock Services before the job, and Shamrock Services assumed the risk of all damages resulting from Mr. Harrington's injury.

Chemtrade Solutions also communicated the risk of the line break job through the purchase order between it and Shamrock Services, which stated:

> "Flammable or toxic liquids, gases, other hazardous materials or dangerous conditions may be present in equipment or work areas involved in the performance of this Order at Buyer's facility. Seller is aware of and has investigated such equipment and work areas and shall take extreme care in the performance of the Services at Buyer's facility and assumes all risk of personal injury and property damage incurred or suffered by Seller, its employees, agents and subcontractors in connection therewith."

(Ex. A., P.O. 47298819).

Through this language, the Seller, here Shamrock Services LLC, agreed to assume the risk of injuries to its employees in performing their services at the Mead Road facility given that hazardous materials or dangerous conditions could be present on site. *See generally Lovelace v. Figure Salon*, 179 Ga. App. 51, 52 (1986) (holding that trial court did not err in granting summary judgment where plaintiff's contract with defendant contained an assumption of risk clause). Mr. Harrington's

injury from contact with sulfuric acid at the Mead Road facility is self-evidently a hazardous material, and is within the scope of this assumption of risk clause.

Therefore, whether by warnings given to Mr. Harrington directly, those given to Mr. Bottoms, and/or those provided in this job's Purchase Order, Defendants produced adequate warnings that the line break job could involve a risk of sulfuric acid exposure, and the hired worker exception bars Plaintiffs' substantive claims.

### C. Plaintiffs' professional negligence and "skilled services" claims fail as a matter of law for lack of expert testimony.

Plaintiffs' professional negligence, negligence, and negligence per se, but these counts fail as a matter of law for lack of expert testimony to support them.

For reasons more fully discussed in Defendants' Motion To Exclude the Opinions of Robert Tolbert and Memorandum of Law in Support ("Mot. To Exclude Tolbert"), Plaintiffs have not produced *any* admissible expert testimony in this matter. When expert testimony is needed to establish a plaintiff's claim, and all expert testimony has been excluded, summary judgment against such plaintiff is appropriate. *See*, *e.g.*, *Dudley v. United States*, No. 1:17-cv-00263, 2020 U.S. Dist. LEXIS 257174, at *21 (N.D. Ga. Jan. 2, 2020) (granting summary judgment on a professional negligence claim where expert testimony was required because Plaintiff's expert was excluded). Even if not excluded, Mr. Tolbert's affidavit contains only conclusory allegations without any underlying factual or methodological basis. Conclusory allegations alone cannot be used to overcome

summary judgment. *See*, *e.g.*, *Davis v. Brouse McDowell, L.P.A.*, 596 F.3d 1355, 1364 (Fed. Cir. 2010) ("An unsupported [expert] opinion… does not create a genuine issue of material fact as to the patentability of Ms. Davis's inventions".); *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2008) (holding that expert opinions that are "conclusory," or based on "speculation" or "conjecture" are "inappropriate material for consideration on a motion for summary judgment.") (citations omitted); *Marvel v. Del. Cty.*, No. 07-5054, 2009 U.S. Dist. LEXIS 46755, at *58 (E.D. Pa. June 2, 2009) ("[A]n expert report that merely offer[s] conclusory opinions, without explicit factual foundation, [is] insufficient to defeat a motion for summary judgment.") (citations omitted). As such, any of Plaintiffs' claims that require expert testimony fail as a matter of law.

The question of whether "alleged professional negligence caused [a] plaintiff's injury is generally one for specialized expert knowledge beyond the ken of the average layperson." *Zwiren v. Thompson*, 276 Ga. 498, 500 (2003). Even when not stylized as a professional negligence claim, Georgia law requires those performing "skilled services" to "exercise a reasonable degree of care, skill, and ability, which is… [the] degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by others of the same profession." *Howell v. Ayers*, 129 Ga. App. 899, 900 (1973); *see also Rentz v.*

*Brown*, 219 Ga. App. 187, 188 (1995) (finding that in an action for negligent construction, "the standard of care must be established through expert testimony").

Plaintiffs alleged that Defendants failed to make safety upgrades to the pipe, including an allegation that the pipe was "designed in a length excess to standards." (ECF No. 1-1, Complaint at ¶ 15). There is no evidence to support these allegations, no evidence of any missing "upgrade," no evidence of the length of the pipe at issue, and no evidence regarding what standard Defendants allegedly failed to comply with. Similarly, Plaintiffs' Complaint alleges that Defendants failed to inspect, maintain, repair, or change the sulfuric acid pipe at issue. (ECF No. 1-1, Complaint at ¶ 26). Any claim of negligent construction, design, maintenance, or repair of the acid pipe structure would require expert testimony to establish as these topics are "beyond the ken of the average layperson." *Zwiren*, 276 Ga. at 500; *Rentz v. Brown*, 219 Ga. App. at 188 (1995) (requiring expert testimony on negligence construction claim). Because Plaintiffs have no admissible expert testimony, these claims, whether stylized as ordinary or professional negligence, fail as a matter of law.

The claim that Defendants failed to remove the acid in the pipes in an appropriate manner is beyond the scope of a lay person. *See* (ECF No. 1-1, Complaint at ¶¶ 16(d) and 22). Plaintiffs may try to argue that the use of air to purge the pipe may not have been a proper method, but as the plaintiffs must acknowledge, the testimony taken and documents produced in this case clearly establish that the

acid line at issue in this case *was* purged using air. (Ex. B, Adams dep. tr. at 35:7–22); (Ex. G, Lawson dep. tr. at 32:20–33:21); (Ex. R, J. Harrington Statement), (Ex. S, Carr Statement). Witness testimony explained the reason air was used. Mr. Adams testified that flushing the pipe with water would "destroy the pipe." (Ex. B, Adams dep. tr. at 45:15–18). He also testified that using water would create a corrosive environment in the pipe, which could cause dangerous leaks that injure people walking below. (*Id.* at 128:8–24). Mr. Bottoms also testified that using water would create a corrosive environment in the pipe. (Ex. C, Bottoms dep. tr. at 30:3–7). Mr. Lawson, who conducted the air purge, said that it was "hard to say" that flushing the line with water would've been better because water "activates the acid" and could "sit in there and cook inside that pipe." (Ex. G, Lawson dep. tr. at 21:6–14). He continued to say that "even if you would've done that, you would still have had residual [acid] in there because you wouldn't have gotten it all out." (*Id.*)

To the extent Plaintiffs would argue that Defendants failed to adequately purge the subject acid line because it was not flushed with water, this argument fails for lack of expert testimony. A lay witness does not have the requisite knowledge of the chemical interaction between water, sulfuric acid, and steel to evaluate the relative risks and benefits of different methods of acid removal. *See, generally, Emerald Coast Utils. Auth. v. Am. Cast Iron Pipe Co.*, No. 3:20cv5986/MCR/ZCB, 2023 U.S. Dist. LEXIS 117481, at *11 (N.D. Fla. July 10, 2023) (reasoning that

determinations regarding corrosion failures in a pipe are beyond the common sense a of a lay juror because they require knowledge of the "interrelationship between the potential corrosive effects of domestic sewage, the chemical environment within a particular pipeline, and the performance capacity of the protective pipe coating.").

**D. Plaintiffs' claims related to PPE fail because Defendants had no duty to require PPE, and because Plaintiffs' have no expert testimony to support their claim that fully encapsulated PPE should have been required.**

In the similar product liability context, "Georgia law only requires that manufacturers warn of the risks associated with their product, and imposes no duty on manufacturers to specify what kind of safety or protective equipment should be used to guard against those risk." *Jones v. Amazing Prods., Inc.*, 231 F. Supp. 2d 1228, 1246 (N.D. Ga. 2002). Similarly, though property owners may have a duty to warn about hazards in some cases, they do not have a duty to prescribe particular safety precautions in addressing the hazard. *O'Steen v. Rheem Mfg. Co.*, 194 Ga. App. 240, 241 (1990) (reasoning that a property owner has no further duty to warn an invitee once the invitee "knows of the condition or hazard."); *cf Jones*., 231 F. Supp. 2d at 1246 (finding that, in a product liability context, "Georgia law only requires that manufacturers warn of the risks associated with their product, and imposes no duty on manufacturers to specify what kind of safety or protective equipment should be used to guard against those risk[s]."). Here, Chemtrade Solutions set minimum PPE requirements that both it and Shamrock Services felt

were adequate for the circumstances. (Ex. B, Adams dep. tr. at 106:7–23); (Ex. C, Bottoms dep. tr. at 39:14–19); (ECF No. 10, Shamrock's Answer and Countercl., at 14, ¶ 22). Shamrock Services bore ultimate responsibility for what PPE to provide its workers and whether to meet Chemtrade Solutions' minimum requirements by purchasing partially or fully encapsulated acid suits. (Ex. C, Bottoms dep. tr. at 28:21–29:2, 40:5–41:2). Defendants' expert, Jim Stanley, has opined that, pursuant to OSHA regulations, a worker's employer (here, Shamrock Services) bears the responsibility to provide appropriate face protection where there is a risk of exposure to flying particulars or acid. *See* (Ex. T, Stanley Rep. at 12); (Ex. U, Stanley Addendum at 7). Absent a duty of Defendants to require particular PPE, Plaintiffs' allegations related to such requirements fail as a matter of law.

Plaintiffs' claims also fail for lack of expert testimony to support their allegation that Defendants breached a duty by not requiring fully encapsulated PPE. Mr, Bottoms testified that he considered several factors in purchasing PPE for this job, and agreed that fully-encapsulated PPE creates greater heat stress, and makes movement and communication more difficult. (Ex. C, Bottoms dep. tr. at 41:9–42:18). Moreover, as Defendants' expert Jim Stanley opined, there is a "hierarchy of controls" that should be used to minimize workplace hazards, and more effective methods of hazard protection should be utilized before less effective ones. (Ex. U, Stanley Addendum at 13). Under this hierarchy, engineering controls, such as more

18

secure rigging of the pipe to prevent movement, should be used before less effective means of reducing hazards such as PPE. (*Id.*) In light of many factors that must be considered in selecting PPE, which are collectively beyond the ken of the lay juror, even if Defendants owed a duty of care to Mr. Harrington in setting minimum PPE requirements, Plaintiffs lack expert evidence to show that the required PPE breached that duty. As such, Plaintiffs' PPE-related claims fail as a matter of law.

### E. Plaintiffs' related failure-to-train claims fail because Defendants required Shamrock Services to ensure its employees take site-specific training courses provided by Abbottsfield, and Mr. Harrington's failure to take these courses did not proximately cause his injuries.

Under Georgia law, Plaintiffs must produce evidence of proximate cause to survive summary judgment. *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (1991). Plaintiffs allege Defendants failed to warn Plaintiff about the presence of acid in the subject pipe and failed to provide site-specific training. (ECF No. 1-1, Complaint at ¶¶ 16(a)–(b), 24). The Purchase Order used to hire Shamrock Services for the subject line break required that everyone who enters the premises take Abbottsfield training modules and provided Shamrock Services with a corresponding URL. (Ex. A., P.O. 47298819). Shamrock Services personnel did not take the training before entering as required. Yet, even if, notwithstanding the Purchase Order, this failure were attributed to Defendants, Plaintiffs' claim would fail because there is no causal link between the information in the Abbottsfield modules and Mr. Harrington's injury. Much of their content is unrelated to the subject incident and any relevant

information was known to Mr. Harrington or his employer. For instance, Mr. Harrington already knew that sulfuric acid is a hazard present at the site and that he needed to wear proper PPE. *Compare* (Ex. D, Abbottsfield training modules, at CHEMTRADESOLUTIONS_000102, 154) *with* (Ex. F., Harrington dep. tr. at 95:12–96:20, 96:23–97:5, 105:15–106:1) *and* (Ex. J, Safe Work Permit). Without evidence that receiving this training would have prevented Plaintiffs' injury, Defendants are entitled to summary judgment. *See*, *e.g.*, *Doe v. YWCA of Greater Atlanta, Inc.*, 321 Ga. App. 403, 408 (2013) (affirming grant of summary judgment on negligent training claim where there was no evidence lack of training caused the subject injury); *Moore v. Eci Mgmt.*, 246 Ga. App. 601, 607 (2000) (affirming grant of summary judgment for Defendant on an inadequate training claim where there was Plaintiff already had the knowledge that the training would have provided).

**F. Mr. Harrington's claims of damages for future lost wages/income, loss of earning capacity, and permanent injury fail because Plaintiffs' have not proven lost earning capacity to a reasonable degree of certainty.**

To make a claim for future lost earnings, a plaintiff must prove such damages with a reasonable degree of certainty," which "means that such '[d]amages may not be determined by mere speculation or guess.'" *Greene v. Cosco Shipping Lines Co. Ltd.*, No. 4:20-cv-00091, 2023 U.S. Dist. LEXIS 180875, at *35 (S.D. Ga. Oct. 6, 2023) (citations and quotations omitted). "An award for impaired earning capacity is intended to compensate the worker for the diminution in [his] stream of income."

*Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 533 (1983). "The goal is to replicate… the injured plaintiff's lost stream of future income," which "is composed of the [difference] between what [Plaintiff] would have earned had he not been injured and what his forecasted actual earnings will be, given his injuries." *Deakle v. John E. Graham & Sons*, 756 F.2d 821, 830 (11th Cir. 1985).

Here, Plaintiffs have not shown a diminution in Mr. Harrington's post-injury income from his pre-injury income. The documents collected in this case show that in the period of December 9–30, 2019, Mr. Harrington earned $4,493.75 as a welder at Shamrock Services. (Ex. N, Harrington-Shamrock Services Wage Statement). For the comparable period of December 9–29, 2022, plaintiff earned nearly the same amount of money ($4,374) as a welder employed by Tesacon. (Ex. Q, Tesecon Employee History Report). As such, there is no evidence that Mr. Harrington has lost any earning capacity at all. Consequently, an award for future wage loss is inappropriate. *See Kiwia v. M/V Oslo Bulk 9, 541 F. Supp. 3d 696*, 707 (E.D. La. 2021) (denying award of future lost wages where evidence showed Plaintiff could "continue to make at least what he was making prior to the accident.").

Summary judgment is also appropriate where there is no medical evidence of an ongoing work restriction. *See Santana v. Westport Glob. LLC*, No. 07-20167-CIV, 2008 U.S. Dist. LEXIS 143170, at *30 (S.D. Fla. July 1, 2008) (denying a future lost wage claim where Plaintiff's doctors had not indicated that Plaintiff had

work restrictions and Plaintiff worked in his same position after the injury). Mr. Harrington has not applied for social security disability or long-term disability. (Ex. V, Pls. Resp. to Meet and Confer Ltr. at 2). At least three treating physicians confirmed that Mr. Harrington is able to return to work. (Ex. W, Doctors Hosp. RTW Note); (Ex. X, Dr. Rivell RTRW Notice); (Ex. Y, Dr. Esterle Work Restriction Questionnaire). Mr. Harrington may believe his injury prevents him from obtaining higher paid jobs in the nickel and iron industry, but Plaintiffs have not produced corroborating evidence of the availability of these jobs, their pay, or that Mr. Harrington's injury prevents him from obtaining them. (Ex. F., Harrington dep. tr. at 163:5–20). There is no evidence that Mr. Harrington ever identified any ongoing injury, disability, or work restriction in his post-injury employment applications. In fact, Mr. Harrington repeatedly certified that he had *no* physical or mental impairments that would prevent him from effectively working as a welder. *See* (Ex. Z, Harrington-DZ ADA Specification Forms, HARRINGTON_EMPL_DZ_0017–30); (Ex. AA, Harrington-Turner Injury Fund Questionnaires, 000294–303).

Plaintiffs argue that Mr. Harrington's estimated wage loss is "$2,423.76/week x 24 months = $252,071.04." (Ex. BB, Pls' Supp. Answers to Chemtrade Solutions First Interrog. to Pls., at 6). There is no evidence in the record to substantiate this claimed amount or duration of wage loss, and it provides no information to support a claim for lost earning capacity. Even if there were such evidence, Plaintiffs have

not produced any evidence that would enable a jury to ascertain the amount of that loss to a "reasonable degree of certainty." *Greene v. Cosco Shipping Lines Co. Ltd.*, No. 4:20-cv-00091, 2023 U.S. Dist. LEXIS 180875, at *35 (S.D. Ga. Oct. 6, 2023).

Because Plaintiffs have not produced more than mere speculation as to Mr. Harrington's future lost wages, future lost income, loss of earning capacity, and permanent injury, Plaintiffs' claims for such damages fail.

### G. Plaintiffs' punitive damages claim fails because there is no evidence that such damages are warranted.

Defendants should be entitled to summary judgment on Plaintiffs' punitive damages claim. As a preliminary matter, under Georgia law, punitive damages are only assessed in extreme cases. *See Roberts v. Forte Hotels, Inc.*, 227 Ga. App. 471 (1997). To authorize punitive damages, Plaintiffs must show clear and convincing evidence of "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to the consequences" of the tortious act. O.C.G.A. § 51-12-5.1(b). "Conscious indifference to consequences means an intentional disregard of the rights of another, knowingly or willfully;" and indeed, even clear and convincing evidence of gross negligence will not support an award of punitive damages. *COMCAST Corp. v. Warren*, 286 Ga. App. 835, 839 (2007)

Moreover, a business's "compliance with county, state, and federal regulations is not the type of behavior which supports an award of punitive

damages," and, "as a general rule," punitive damages are "improper where a defendant has adhered to… safety regulations." *Stone Man v. Green*, 263 Ga. 470, 472, 435 (1993). While compliance with safety regulations alone is not dispositive, Plaintiffs still "must present some evidence of 'willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.'" *Edwards v. Ethicon, Inc.*, 30 F. Supp. 3d 554, 564 (S.D. W. Va. 2014) (citations omitted) (applying Georgia law and granting summary judgment on punitive damages claim).

Here, the undisputed evidence demonstrates that Chemtrade Solutions complied with applicable OSHA regulations regarding the line break incident on December 30, 2019. *See* (Ex. T, Stanley Rep. at 17); (Ex. U, Stanley Addendum at 13). Furthermore, there is no evidence in this case that Defendants intentionally disregarded Plaintiffs' rights, which is necessary to show a "conscious indifference to consequences," *COMCAST*, 286  Ga. App. at 839; or that Defendants specifically acted with the purpose of causing damage. Indeed, there is evidence that Defendants sought to reduce the risk of injury on the job. For instance, Mr. Lawson purged the subject line of acid, checking the low point drain, and verified no acid was coming out at the end of the purge to ensure the maximum amount of acid was removed before Shamrock Services employees began work. (Ex. B, Adams dep. tr. at 35:7–35:22); (Ex. G, Lawson dep. tr. at 32:20–33:21). Chemtrade Solutions set minimum

PPE requirements including an acid suit, hood, face masks, etc. to prevent exposure of Shamrock's employees to acid on the job. (Ex. B, Adams dep. tr. at 106:7–23); (Ex. I, Email from D. Diehl to M. Hunziker et al); (Ex. J, Safe Work Permit). Chemtrade Solutions had a safety shower on its premises near the site of Harrington's injury in case of injury, (Ex. B, Adams dep. tr. at 66:4–19); and Mr. Adams promptly called 911 after the incident. (Ex. B, Adams dep. tr. at 66:4–19); (Ex. C, Bottoms dep. tr. at 89:17–90:15); (Ex. G, Lawson dep. tr. at 15:9–16:2).

Because Plaintiffs cannot offer evidence that Defendants acted deliberately and with malice with regard to Plaintiffs, or with an entire want of care, their punitive damages claim should fail as a matter of law.

### H. If summary judgment is granted against Plaintiffs' substantive claims, Plaintiffs' loss of consortium claim would also fail.

"A claim for loss of consortium is derivative of a spouse's injury claims, and, therefore, if the spouse's injury claims do not survive summary judgment, the loss of consortium claim also cannot survive summary judgment." *Wilson v. Taser Int'l, Inc.*, No. 4:06-CV-0179-HLM, 2008 U.S. Dist. LEXIS 129802, at *10 (N.D. Ga. June 12, 2008). Thus, if Mr. Harrington's substantive claims fail on summary judgment, Mrs. Harrington would not be entitled to loss of consortium damages.

## V.   CONCLUSION

For the reasons stated herein, this Court should grant Defendants' motion for summary judgment.

Respectfully submitted this 14th day of November, 2023.

**NELSON MULLINS RILEY &
SCARBOROUGH LLP**

/s/ *Alex G. Pisciarino*
Richard B. North, Jr.
Georgia Bar No. 545599
Alex G. Pisciarino
Georgia Bar No. 569773
201 17th Street, NW
Suite 1700
Atlanta, GA 30363
(404) 322-6000 (phone)
(404) 322-6050 (facsimile)
richard.north@nelsonmullins.com
alex.pisciarino@nelsonmullins.com

*Counsel for Defendants/Third-Party
Plaintiffs/Third-Party Counterdefendants
Chemtrade Solutions LLC, Chemtrade
Chemicals US LLC, Chemtrade Chemicals
Corporation, Chemtrade Performance
Chemicals US, LLC, and Chemtrade
Logistics (US), Inc.*

## REQUEST FOR ORAL ARGUMENT

In accordance with L.R. 7.1(E), Defendants request oral argument on the issue of assumption of risk and warnings as outlined in Section IV (B) of the foregoing memorandum, because it is potentially dispositive and is based on a detailed factual record. The undersigned counsel with less than five (5) years of experience will be chiefly responsible for oral argument.

Respectfully submitted this 14th day of November, 2023.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

/s/ *Alex G. Pisciarino*
Alex G. Pisciarino
Georgia Bar No. 569773

## **CERTIFICATE OF COMPLIANCE**

In accordance with Local Rule 7.1D, the undersigned certifies that this brief has been prepared using 14-point Times New Roman font in accordance with the Local Rules.

Respectfully submitted this 14th day of November, 2023.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

/s/ *Alex G. Pisciarino*
Alex G. Pisciarino
Georgia Bar No. 569773